**UNITED STATES DISTRICT COURT**

**SOUTHERN DISTRICT OF CALIFORNIA**

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>                                    Plaintiff,<br><br>        v.<br><br> MARK J. BOUCHER,<br><br>                                    Defendant. | Case No. 21-cr-02872-BAS-1<br><br>**ORDER DENYING MOTION FOR COMPASSIONATE RELEASE (ECF No. 157)** |

## I.    INTRODUCTION

Defendant Mark J. Boucher moves to reduce his sentence pursuant to 18 U.S.C. § 3582(c)(1)(A)(i)—compassionate release—claiming his medical conditions are being inadequately treated in custody, and that as a result, he is unable to care for himself and faces the possibility of death.  (ECF No. 157.)  The Government opposes (ECF No. 163), and Defendant replies (ECF No. 168; *see also* ECF Nos. 169, 170).

There is no question Defendant has some medical concerns.  There is also no question that Defendant consistently demonstrates a willingness to lie and scheme about those conditions if he thinks it will help him.  Having reviewed the Bureau of Prisons

- 1 -

21cr2872

("BOP") medical records, as well as considered Defendant's past behavior and the § 3553(a) factors, the Court concludes compassionate release is not warranted. Hence, the Court **DENIES** Defendant's Emergency Motion to Reduce his Sentence pursuant to 18 U.S.C. § 3582(c). (ECF No. 157.)

## II.   BACKGROUND

Defendant was an investment adviser registered with the Securities and Exchange Commission ("SEC"). (Presentence Report ("PSR") ¶ 6, ECF No. 70.) From late 2010 to 2020, he misappropriated more than $3 million from his clients. (*Id.* ¶ 7.) He used the stolen money to fund a lavish lifestyle including cars, dinners, and trips to a five-star resort. (*Id.*) His thefts included forging signatures, impersonating a client on the telephone, authorizing wire transfers from clients' investment accounts, and diverting funds left to a non-profit beneficiary after that client had died. (*Id.* ¶¶ 9–14.) In addition, Defendant provided false documents to the SEC and to the San Diego Superior Court to conceal his fraud. (*Id.* ¶ 21.)

At Sentencing, the Court considered many victim impact statements about the effect Defendant's abuse of their trust had had on them. One victim said Defendant had boasted he could "beat any system." (PSR ¶ 34.)

While serving in the United States Marine Corps, Defendant was a victim of grenade explosions. As a result, he suffers from multiple mental and physical health conditions, including PTSD, sleep apnea, hearing loss, neuropathy, back problems, and sensitivity to light. He has been found 100% medically disabled from the Marine Corps since 2012 and receives monthly disability payments. (PSR ¶ 101.)

During the course of the case, Defendant claimed he was physically and mentally unable to stand trial. Defendant appeared in Court in a motorized mobility scooter and appeared unable to perambulate. He also was accompanied by his emotional support dog who allegedly could tell if he might become unconscious and lick him to warn him.

During the course of litigation about Defendant's medical concerns, the Government presented evidence showing Defendant was able to fly alone from South Dakota to San

Diego without the accompanying service dog, able to pick up his suitcase and place it on a scale and conveyor belt, walk through security with minimal use of a cane, and able to stand on one leg to put shoes back on without apparent difficulty. The Government also presented surveillance video footage showing Defendant left home without his mobility scooter, walked his dogs without the assistance of a cane or walker, was able to pull trash cans back toward the residence without difficulty, and climbed on a car to wash it. These surveillance videos and photographs presented to the Court contradicted Defendant's representations about the extent of his abilities. The Court found Defendant competent to stand trial. (ECF No. 53.)

Defendant is being held at the BOP medical facility located in Rochester, Minnesota. The Government's Response details all the medical services available to Defendant at that facility, including hospitalization and treatment at the Mayo Clinic when necessary. (ECF No. 163.) The facility has a wide variety of medical specialists, as well as individuals who can provide assistance with activities for daily living, in-patient care, 24-hour nursing, and a designated mental health services division. (*Id.*)

Contrary to the representations in Defendant's Motion, Defendant appears to be getting treatment for his various medical conditions. For example, his claim that he struggles with sleep apnea and has not been provided a mask for his treatment despite multiple requests (ECF No. 157, at 3) is demonstrably false. Defendant has been issued his own personal BiPAP machine at FMC Rochester. (ECF No. 163, Ex. 1, at 521.) He lied to his respiratory therapist about his use of the mask and the mask seal. (*Id.*) The respiratory therapist confronted Defendant about these lies. (*Id.* ("You know what is even more disappointing—you continuing to lie about your BiPAP usage.").) Additionally, he has been seen by dermatologists at the Mayo Clinic and has received antibiotics to address his concerns about impetigo. (*Id.*, Ex. 3, at 2155; Ex. 2, at 1404, 1423.) By January 2, 2026, an infectious disease consultant noted that Defendant's skin lesions were "well healed and noninfectious at this point in time." (*Id.*) Defendant's claims about a hematoma above the injection site after an epidural are completely unsupported by the record. (*Id.*,

21cr2872

Ex. 2, at 1540, 1548, 1827.)  And, despite his expert doctor's representation that there are no specialists available to address Defendant's TMJ issues, in fact Defendant is scheduled for oral surgery for his TMJ on April 3, 2026.  (*Id.*, Ex. 3, at 2307.)

The doctor retained by Defendant to opine that Defendant is receiving inadequate medical care has never observed or treated any of Defendant's conditions, has not observed the facility's treatment of Defendant, and relies largely on Defendant's self-serving statements.  This doctor is perhaps unaware of Defendant's past history of prevarication, exaggeration, and manipulation.

## III.   ANALYSIS

### A.   Exhaustion of Administrative Remedies

Under 18 U.S.C. § 3582(c)(1)(A), a court may, in certain circumstances, modify or reduce a defendant's term of imprisonment, but only after he has exhausted his administrative remedies.  The "district court must enforce the administrative exhaustion requirement" when it is properly invoked by the Government.  *United States v. Keller*, 2 F.4th 1278, 1280 (9th Cir. 2021).

"Requiring inmates to exhaust their administrative remedies before seeking court intervention serves several purposes.  First, it protects administrative agency authority by guaranteeing agencies the 'opportunity to correct [their] own mistakes.'"  *United States v. Ng Lap Seng*, 459 F. Supp. 3d 527, 532 (S.D.N.Y. 2020) (quoting *Woodford v. Ngo*, 548 U.S. 81, 89 (2006)).  "Second, it promotes efficiency, since claims 'generally can be resolved much more quickly and economically in proceedings before an agency than in litigation in federal court.'"  *Id.*

Section 3582 provides two alternative routes to exhaustion.  In the first, a petitioner files a petition with the Warden seeking release, which is denied by the Warden and the petitioner proceeds to continue to fully exhaust his administrative remedies by appealing this refusal from the Warden.  In the second, the Warden takes no action, 30 days lapse, and because of the Warden's failure to act, the petitioner may proceed without fully exhausting his administrative remedies.  18 U.S.C. § 3582(c)(1)(A).

21cr2872

Although the Government argues Defendant has failed to exhaust his administrative remedies, Defendant's counsel attaches a letter dated June 30, 2025, to the Warden at FMC Rochester detailing Defendant's medical conditions and explaining why these conditions justify compassionate release. (ECF No. 168-1.) Counsel states neither he nor Defendant received any response to this letter. Since more than 30 days have elapsed, Defendant may proceed without further exhausting his administrative remedies. *See Keller*, 2 F.4th at 1281; 18 U.S.C. § 3582(c)(1)(A).

### B.    Extraordinary and Compelling Circumstances

If the exhaustion requirement is met, a court may modify or reduce the defendant's term of imprisonment "after considering the factors set forth in [18 U.S.C. § 3553(a)]" if the Court finds, as relevant here, that "extraordinary and compelling reasons warrant such a reduction" and "such a reduction is consistent with applicable policy statements issued by the Sentencing Commission." 18 U.S.C. § 3582(c)(1)(A). As the movant, the defendant bears the burden to establish that he is eligible for a sentence reduction. *United States v. Holden*, 452 F. Supp. 3d 964, 966 (D. Or. 2020). Because "compassionate release derogates from the principle of finality, it is a narrow remedy . . . the court's disposition of a compassionate release motion is discretionary, not mandatory." *United States v. Wright*, 46 F.4th 938, 944–45 (9th Cir. 2022).

The Policy Statement issued by the Sentencing Commission allows for compassionate release based on the "medical circumstances of the defendant" in certain circumstances. U.S.S.G. § 1B1.13(b)(1). Specifically, a defendant's medical condition can warrant release if he is suffering from a terminal illness, suffering from a serious physical or medical condition "that substantially diminishes [his] ability . . . to provide self-care within the environment of a correctional facility and from which he . . . is not expected to recover," or when he is suffering from "a medical condition that requires long-term or specialized medical care that is not being provided and without which the defendant is at risk of serious deterioration in health or death." *Id.* § 1B1.13(b)(1)(A)–(C).

21cr2872

Although Defendant suffers from serious medical conditions, he fails to demonstrate that they are sufficient to constitute extraordinary and compelling circumstances warranting release. The fact that Defendant has manipulated and lied about his medical conditions in the past makes it more difficult to evaluate his situation, but he appears able to provide self-care, and a review of his medical records supports that he is receiving appropriate specialized medical care at FMC Rochester. He does not have a terminal illness, nor does he provide sufficient information supporting his claim that he is facing possible death because of his medical care. The Court discounts much of the information provided by his expert witness doctor, since this doctor has never met with Defendant personally, has not witnessed the medical care Defendant is receiving, and has not been exposed to Defendant's past deception.

Because Defendant fails to meet his burden to establish extraordinary and compelling circumstances warranting his release, the Court finds compassionate release is not appropriate.

### C.    Section 3553 Factors

Furthermore, the Court finds the factors listed in 18 U.S.C. § 3553(a) also do not support Defendant's release. Release would not reflect the seriousness of Defendant's offense, nor the depth to which his victims were hurt by his conduct. Release would not provide just punishment for his offense, nor promote respect for the law. Defendant has demonstrated a confidence that he can, as told one victim, "beat the system." Release would demonstrate that he has done so by exaggerating his medical circumstances. The Court is not convinced that release would deter Defendant from future criminal conduct and, thus, would not protect the public from Defendant's further crimes. For all of these reasons, the Court finds, even if Defendant had demonstrated extraordinary and compelling reasons for release, the factors listed under § 3553(a) do not support release.

## IV.    CONCLUSION

For all the reasons stated above, the Court **DENIES** Defendant's Motion for Compassionate Release. (ECF No. 157.) Further, the Clerk of Court shall **TERMINATE**

- 6 -

21cr2872

**AS MOOT** the pending motions related to the filing of Defendant's Reply.  (ECF Nos. 168, 170.)  The Reply is on the docket and preserved for the record.

      **IT IS SO ORDERED.**

**DATED: February 24, 2026**

**Hon. Cynthia Bashant, Chief Judge**
**United States District Court**

21cr2872